HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHAUNDRA HOWARD,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN COLVIN, in her official capacity as Head of the United States Social Security Administration; and JOHN DOES 1-10;<br><br>　　　　　Defendants. | CASE NO. 2:22-cv-00022-RAJ<br><br>ORDER |

## I.　INTRODUCTION

THIS MATTER comes before the Court on Defendant Carolyn Colvin ("Defendant")'s Motion for Summary Judgment. Dkt. # 39.[1] *Pro se* Plaintiff Shaundra Howard filed a Response to Defendant's Motion, to which Defendant replied. Dkt. ## 41, 42.

For the reasons set forth below, the Court **GRANTS** Defendant's Motion in its entirety.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court automatically substituted Defendant as the successor to Defendant Martin O'Malley, who was the successor to Defendant Kilolo Kijakazi. *See* Fed R. Civ. P. 25(d).

ORDER – 1

## II.    BACKGROUND

This is an employment discrimination and retaliation action against Defendant, named in her official capacity as Head of the United States Social Security Administration.

Plaintiff is an African American woman who worked at the Social Security Administration ("SSA") for over five years. Dkt. # 1 at ¶ 11. She originally brought claims under both Title VII and 42 U.S.C. § 1983 relating to alleged discrimination and retaliation by her employer. *See generally id*. Plaintiff alleges she experienced a hostile work environment where coworkers engaged in derogatory and demeaning name-calling toward her based on her race and sex. *Id.* at ¶¶ 15-52. In 2014, Plaintiff filed a formal U.S. Equal Employment Opportunity Commission ("EEOC") complaint regarding the alleged harassment. Dkt. # 9-1 at 2-5. She claims that the harassment continued after she filed the EEOC complaint; specifically, coworkers would place candy bars on her desk, glare at her often, and block exits out of the building to intimidate her. Dkt. # 1 at ¶¶ 12, 30, 48. She further states that her supervisors also engaged in discrimination and retaliation based on her EEOC activity by failing to stop the ongoing harassment, refusing to provide adequate assistance for her workload, and delaying a leave request. *Id.* at ¶¶ 12, 22, 32-33, 42, 52.

In October 2021, the EEOC issued a decision and entered judgment in favor of the SSA, concluding that Plaintiff was unable to establish that she was discriminated against or subjected to a hostile work environment because of her race, her sex, or reprisal. Dkt. # 9-2 at 2-12. On January 6, 2022, Plaintiff filed her Complaint in this Court suing Defendant, as Acting Secretary of the SSA, for alleged violations of Title VII and 42 U.S.C. § 1983. *See generally* Dkt. # 1. On March 28, 2022, Defendant filed a Motion to Dismiss based on insufficient service, lack of subject matter jurisdiction, and failure to state a claim. Dkt. # 8. Plaintiff filed a response to the Motion that did not comply with the Court's filing deadlines. Dkt. # 13.

The Court granted in part and denied in part Defendant's Motion to Dismiss, ruling that (1) Plaintiff's claims under § 1983 were preempted by Title VII and (2) the Court

ORDER – 2

lacked jurisdiction over Plaintiff's sexual harassment claim under Title VII because she failed to exhaust her administrative remedies, thus requiring dismissal. Dkt. # 16. Defendant now moves for summary judgment on Plaintiff's remaining claims, which fall into the following three categories: (1) disparate treatment; (2) retaliation; and (3) hostile work environment. Dkt. # 39.

## III.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."). The opposing party must present significant and probative

ORDER – 3

evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

### IV. DISCUSSION

#### A. Disparate Treatment

Defendant first moves for summary judgment on Plaintiff's claims relating to disparate treatment. As elucidated by Title VII, employees cannot discriminate against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Claims of disparate treatment brought under Title VII must include an alleged act of discrimination that "affect[s] the terms and conditions of employment." *Burlington N. and Sante Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006). The removal of or substantial interference with work facilities important to the performance of an employee's job constitutes a material change in the terms and conditions of employment and thus is an "adverse employment action" under Title VII. *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1126 (9th Cir. 2000). Conversely, an employer's failure to respond to grievances does not qualify as an adverse employment action. *Id*.

Defendant identifies four areas of consideration for the Court when adjudicating Plaintiff's disparate treatment claims: (1) allegations of increased workload; (2) denial of leave requests; (3) a letter of reprimand; and (4) assertions that Defendant "did nothing" in response to Plaintiff's reports of harassment. Dkt. # 42 at 3-6. The Court will analyze these specific events or allegations in conjunction with the facts of the case.

Plaintiff claims she "was forced to endure an unbearable workload." Dkt. # 1 at ¶ 50. The Court agrees with Defendant's admission that "overloading an employee and denying them help could perhaps constitute 'substantial interference with work facilities important to the performance of the job.'" Dkt. # 39 at 15. However, the Court concurs

ORDER – 4

with Defendant that the actions of Plaintiff's supervisors show there is no genuine dispute of material fact. Defendant has provided the Court with a series of emails showing that help was available to Plaintiff. Specifically, the emails reference another employee assisting with Plaintiff's workload while Plaintiff was out of the office and Plaintiff's supervisor delegating work to another employee after Plaintiff took issue with having to assist a coworker. Dkt. # 40-16 at 2, 13. Plaintiff's Response fails to offer any counterargument regarding the evidence presented. In fact, the Response constitutes an almost verbatim recitation of her Complaint.[2] Because Plaintiff cannot refute the evidence that she was offered help regarding her workload, she cannot show that there was an adverse employment action.

Plaintiff's allegation that she was denied leave to pursue her EEOC proceeding lacks merit, and the evidence plainly shows as much. Plaintiff's supervisor approved her request within three hours. Dkt. # 40-17 at 8. Moreover, Plaintiff does not show how an official reprimand letter she received on January 12, 2016, had any adverse consequences for her. Dkt. # 40-21 at 8; *see Staples v. Dep't of Soc. & Health Servs.*, No. 2:07-cv-05443-RJB, 2009 WL 442074, at *10 (W.D. Wash. Feb. 17, 2009) (finding that a letter of reprimand, by itself, is not an adverse employment action).

Finally, Plaintiff repeatedly asserts that Defendant "did nothing" in response to her reports of harassment. Dkt. # 41 at 13, 24, 30-33. Defendant has provided a plethora of evidence to show that it looked into all of Plaintiff's reports and counseled employees when appropriate. When Plaintiff informed Defendant that a coworker was "glaring" at her, management interviewed and advised the coworker about his perceived behavior. Dkt. ## 40-11 at 6-7; Dkt. # 40-18 at 10-11, 15-17. Furthermore, when Plaintiff complained that her own supervisor had intentionally bumped into her with a wheelchair, the supervisor escalated the complaint to Defendant's in-house counsel, who then assigned another

---

[2] Plaintiff's Response also violates Local Rule 7(e)(3), as it is ten pages over the twenty-four page limit prescribed by the Rule. *See* LCR 7(e)(3).

ORDER – 5

manager to investigate the incident. *Id.* at 17-23. In light of the evidence provided and Plaintiff's failure to refute it, the Court finds that Defendant took appropriate action in investigating these incidents, and any claims of disparate treatment are unfounded.

Assuming, *arguendo*, that Plaintiff could indeed show an adverse employment action, her disparate treatment claims would fail nonetheless, as none of Defendant's actions was pretextual. If a plaintiff alleging employment discrimination can make out a prima facie case, then the burden of production shifts to the defendant, who then must articulate a legitimate, non-discriminatory reason for the adverse employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 US. 248, 253 (1981). If the defendant can establish a legitimate reason for his actions, the burden shifts back to the plaintiff, who must "put forward specific and substantial evidence challenging the credibility of the employer's motives." *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1282 (9th Cir. 2017).

Here, there is no evidence to show that any of Defendant's actions were pretextual. For example, Howard was not the only individual to complain about her workload, as White, Black, and Asian employees voiced similar concerns about their own dockets. Dkt. # 40-16 at 2-3, 6, 47-48. Plaintiff's Response fails to address this fact. Regarding Plaintiff's request for leave to proceed with her EEOC action, she does not respond to Defendant's argument that her union contract called for managers to grant such time upon reasonable request only, which was based on the stage of the case and nature of the activity. Dkt. # 40-26 at 4-6. To cinch the matter, Plaintiff fails to identify a single instance in which management responded differently to her complaints than it did for other individuals.

The Court will conclude this section by briefly addressing Plaintiff's statement that "the agency's quest for dismissal, at its core, is asking this tribunal to make credibility determinations" and her cited contention that "[a] decision without a hearing is inappropriate when there are genuine issues as to credibility . . . ." Dkt. # 41 at 3. The Court is not making a credibility determination, but rather analyzing the evidence provided by the parties to evaluate the legality of Defendant's actions and how Plaintiff's failure to

ORDER – 6

1  act affects the merit of her claims.  As stated in this section and pursuant to the *McDonnell*
2  *Douglas* burden-shifting framework, if Defendant can establish a legitimate reason for the
3  SSA's actions, *the burden shifts back to Plaintiff*, who must "put forward specific and
4  substantial evidence challenging the credibility of the employer's motives." *Mayes*, 846
5  F.3d at 1282 (emphasis added).  Moreover, the case cited by Plaintiff in her Response does
6  not even include the words "credibility" or "hearing" and is inapposite to this matter.  *See*
7  *generally Wellington v. Lyon Cnty. Sch. Dist.*, 187 F.3d 1150 (9th Cir. 1999) (concerning
8  an action brought by a plaintiff who alleged that the defendants violated the Americans
9  with Disability Act by terminating his employment due to his carpal tunnel syndrome).

10  Accordingly, Plaintiff does not meet her burden of producing "specific and
11  substantial evidence" to rebut Defendant's reasons for the SSA's actions, which Defendant
12  avers were not pretextual.  The Court **GRANTS** Defendant's Motion on Plaintiff's
13  disparate treatment claims.

14  **B.    Retaliation**

15  Defendant next moves for summary judgment on Plaintiff's retaliation claims.  To
16  assert a retaliation claim, a plaintiff must show that (1) he engaged in a protected activity,
17  (2) he suffered an adverse employment decision, and (3) there was a causal link between
18  the protected activity and the adverse employment action.  *Villiarimo v. Aloha Island Air,*
19  *Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).

20  The Court summarily grants Defendant's Motion on Plaintiff's retaliation claims,
21  as they are, in this specific case, duplicative of and contingent upon her disparate treatment
22  claims.  There is no dispute that Plaintiff engaged in a protected activity, as she was
23  pursuing EEOC claims during the course of her employment with Defendant.  However,
24  the Court explained in exhaustive detail, *supra*, that she did not suffer any adverse
25  employment action.  Plaintiff's retaliation claim therefore fails based on the second prong
26  of analysis, and the Court need not determine whether there was a causal link between the
27  protected activity and the adverse employment action.

28  ORDER – 7

The Court **GRANTS** Defendant's Motion on Plaintiff's retaliation claims.

**C.     Hostile Work Environment**

Finally, Defendant moves for summary judgment on Plaintiff's hostile work environment claims. To establish a prima facie case for a hostile work environment claim based on race under Title VII, an employee must raise a triable issue of fact as to whether: (1) the defendant subjected the plaintiff to verbal or physical conduct based on her race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995).

Defendant asserts a reasonable care affirmative defense in response to Plaintiff's allegations. Employers "may avoid liability by asserting a 'reasonable care' defense." *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007). When attempting to establish this defense, the employer must prove that (1) it "exercised reasonable care to prevent and correct promptly any [ ] harassing behavior" and (2) "the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer." *Id.* (internal citation omitted).

The Court finds that Defendant took prompt, corrective actions to prevent harassment, and Plaintiff failed to take advantage of these actions by refusing to cooperate with Defendant's investigation into the alleged conduct. At the time of the allegations, Defendant had an anti-harassment policy that required all employees to undergo certain training every two years. Dkt. # 40-29. Although Plaintiff repeatedly makes the conclusory allegation that Defendant "did nothing" to respond to her reports of harassment, Defendant verified that the employees in Plaintiff's department had taken their training course. Dkt. # 40-28 at 2-4.

As previously outlined in this Order, Defendant provided evidence that it promptly responded to Plaintiff's reports of harassment. The Court repeats the following:

> When Plaintiff informed Defendant that a coworker was

ORDER – 8

"glaring" at her, management interviewed and advised the coworker about his perceived behavior. Dkt. ## 40-11 at 6-7; Dkt. # 40-18 at 10-11, 15-17. Also, when Plaintiff complained that her own supervisor had intentionally bumped into her with a wheelchair, the supervisor escalated the complaint to Defendant's in-house counsel, who then assigned another manager to investigate the incident. *Id.* at 17-23.

*See* Order at 5-6. Plaintiff offers nothing to counter this evidence.

Finally, the emails provided by Defendant show that whenever management tried to obtain more information from Plaintiff, she refused to cooperate and stated she was going to add the alleged incidents to her EEOC proceedings. Dkt. # 40-18 at 6. The Ninth Circuit has found a plaintiff's failure to participate in the investigation of her allegations relevant when evaluating the availability of a defendant's reasonable care defense. *Wallace v. San Joaquin Cnty.*, 58 F. App'x 289, 291 (9th Cir. 2003). The exhibits demonstrate that management did all it could to prevent employee misconduct and promptly investigated all of Plaintiff's complaints. Defendant's reasonable care affirmative defense is valid.

The Court **GRANTS** Defendant's Motion on Plaintiff's hostile work environment claims.

## V. CONCLUSION

Based on the foregoing reasons, the Court **GRANTS** Defendant Carolyn Colvin's Motion for Summary Judgment. Dkt. # 39.

Dated this 14th day of January, 2025.

The Honorable Richard A. Jones
United States District Judge

ORDER – 9